IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TNA AUSTRALIA PTY LIMITED and § 
TNA NORTH AMERICA INC., §
 §
    Plaintiffs, §
 §
V. §     No. 3:17-cv-642-M
 §
PPM TECHNOLOGIES, LLC, §
 §
    Defendant. §

## MEMORANDUM OPINION AND ORDER

Plaintiffs TNA Australia Pty Limited and TNA North America Inc. (collectively, "Plaintiffs" or "TNA") have filed a Motion to Compel to Discovery, *see* Dkt. No. 68 (the "MTC"), requesting that the Court enter an order (1) compelling Defendant PPM Technologies, LLC ("PPM") to produce documents and information in response to TNA's discovery requests relating to the identification of PPM's customers with respect to the accused PPM products at issue in this patent infringement case; and (2) extending the fact discovery deadline from May 11, 2018 to and through June 1, 2018 for the limited purpose of conducting discovery, including third-party discovery, relating to PPM's customers.

Chief Judge Barbara M. G. Lynn has referred the MTC to the undersigned United States magistrate judge for a hearing, if necessary, and for recommendation or determination under 28 U.S.C. § 636(b). *See* Dkt. No. 71. Judge Lynn's "Order of Referral also prospectively refers all procedural motions (e.g., to modify briefing

limitations, to supplement a motion, or for an expedited hearing) hereafter filed by a party who supports or opposes the referred motion, and that relate to the United States Magistrate Judge's resolution of the motion." *Id.* at 1.

PPM filed a Response to Plaintiffs' Motion to Compel and Motion for In Camera Review of Sensitive Documents, *see* Dkt. No. 77, and TNA filed a reply, *see* Dkt. No. 80.

For the reasons and to the extent explained below, the Court GRANTS Plaintiffs TNA Australia Pty Limited and TNA North America Inc.'s Motion to Compel Discovery [Dkt. No. 68] and DENIES Defendant PPM Technologies, LLC's Motion for In Camera Review of Sensitive Documents [Dkt. No. 77].

## Background

The pertinent factual background and procedural background is familiar to the parties and will not be recounted here except as necessary in the Court's analysis and conclusions below.

TNA explains that

Plaintiff TNA Australia Pty Limited is the owner, and Plaintiff TNA North America Inc. the exclusive licensee, of all substantial rights in and to United States Patent No. 7,185,754 ("the '754 Patent"). As alleged in the Complaint (ECF No. 1), Plaintiffs contend that PPM infringes one or more claims of the '754 Patent by making, using, importing, selling, and/or offering to sell in or into the United States, certain conveyor assemblies, including but not limited to the conveyor assemblies identified in the Complaint. Indeed, in addition to the conveyor assemblies specifically identified in the Complaint, PPM has provided documents and information in response to Plaintiffs' discovery requests demonstrating numerous other infringing conveyor assemblies provided by PPM to one or more of its customers.

Under the Patent Act, Plaintiffs are entitled to damages adequate to compensate for PPM's infringement (and in no event less than a reasonable royalty). In this case, given that Plaintiffs and PPM are direct

competitors in the U.S. marketplace for the patented invention of the '754 Patent, Plaintiffs seek damages in the form of lost profits, lost sales, and lost opportunities, as well as injunctive relief. (See ECF No. 1, at ¶¶ 21-24 & Prayer for Relief.) As such, the identity of the customers to which PPM has sold its infringing conveyor systems – as compared to Plaintiffs' customers and prospective customers – is highly relevant, and in fact necessary, to Plaintiffs' claims for damages. PPM, however, has unilaterally withheld any and all identifying information of its customers through unfounded objections to Plaintiffs' discovery requests, and related application of redactions to PPM documents produced in this case.

Moreover, PPM has also delayed Plaintiffs in bringing this issue to the Court's attention, stating in numerous discussions that it was still considering Plaintiffs' requests. At this juncture, however, Plaintiffs have no choice but to file the present [MTC].
....

On December 22, 2017, Plaintiffs served counsel for PPM with Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of Requests for Production. See A0001-A0009; A0010-A0026. In relevant part with respect to the present [MTC], Plaintiffs' First Set of Interrogatories included the following Interrogatory No. 4:

> For each Accused Product the identification of which is sought in Interrogatory No. 1, Identify all Persons that you have sold or offered to sell or otherwise supplied or provided, or plan to sell or offer to sell or otherwise supply or provide, the product to, including, for each such Person, the quantity and price for each product sold or offered for sale or otherwise supplied or provided, and the date of such sale, offer for sale, or supply or providing.

A0005. A number of Requests in Plaintiffs' First Set of Requests for Production likewise sought documents related to PPM's customers, including their identification. For example Request No. 24 states as follows:

> Documents sufficient to Identify any and all Persons to which you have sold or offered to sell or otherwise supplied or provided, or plan to sell or offer to sell or otherwise supply or provide, each Accused Product, and, for each such Person, Documents sufficient to Identify the quantity and price for each Accused Product sold or offered for sale or otherwise supplied or provided and the Date of such sale, offer for sale, or supply or providing.

A0021. Other Requests seeking documents related to PPM's customers include Request Nos. 11, 15, 16, 17, 18, 19, 20, 23, and 34. See A0010-A0026.

On January 30, 2018, PPM provided its objections and responses to Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of

Requests for Production. With respect to Request No. 24, PPM "object[ed] to revealing the identities of its customers." A0053. Despite this and other objections, however, PPM responded that it had "produced responsive documents." PPM similarly "object[ed] to revealing the identities of its customers" in response to a large number of Plaintiff's other Requests, including Request Nos. 1, 5, 6, 8, 11, 12, 13, 14, 16, 17, 18, 19, 20, 23, 24, 25, and 26. See A0041-0062. Notably, PPM did not include any such objection (i.e., to "revealing the identities of its customers") in response to Plaintiffs' Interrogatory No. 4, which plainly sought the identification of PPM's customers with respect to the accused products. See A0033-A0034. Nonetheless, PPM's response to that Interrogatory did not provide the requested identification of PPM's customers. See A0033-A0034.

Shortly after service of PPM's objections and responses to Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of Requests for Production, PPM provided "Supplemental Objections" to Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of Requests for Production. See A0063-A0064. In short, PPM supplemented its objections to certain requests, including Interrogatory No. 4, to include the following objection: "Defendant further objects to the extent the [request/interrogatory] calls for the disclosure of any of Defendant's trade secrets or other confidential information." A0063.

On February 13, 2018, Plaintiffs' counsel wrote to PPM's counsel to advise and inquire regarding a large number of deficiencies in PPM's responses to Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of Requests for Production (as well as PPM's responses to Plaintiff's First Set of Requests for Admission). See A0065-A0071. Among the deficiencies raised, Plaintiffs' counsel advised PPM that its refusal to provide documents and information regarding the identification of PPM's customers with respect to the accused products was unfounded. See A0067. Plaintiffs' counsel noted that "the identity and location of PPM's customers are highly relevant to TNA's claims of direct and indirect infringement, as well as TNA's overall damages claims," and further noted that "any business or competitive concern regarding disclosure of the identification of PPM's customer is sufficiently alleviated by the Protective Order in this case, which allows PPM to designate such information 'Confidential Attorney Eyes Only Information,' thereby shielding the information from TNA itself." A0067.

As such, Plaintiffs' counsel requested that PPM withdraw its objections, provide any and all responsive information previously withheld under the objections, and likewise produce unredacted copies of the documents previously produced by PPM – wherein customer-identifying information (e.g., name, address, etc.) had been redacted. A0067.

The next day, on February 14, 2018, the parties met and conferred regarding, inter alia, the deficiencies in PPM's responses to Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of Requests for Production (as well as PPM's responses to Plaintiff's First Set of Requests for Admission). See A0128-A0129. PPM's counsel advised that PPM would respond to the February 13, 2018 letter from Plaintiffs' counsel by February 26, 2018 – after PPM's counsel's vacation. See A0128-A0129. On February 27, 2018, after follow-up inquiry from Plaintiffs' counsel, PPM finally provided a letter response to the February 13, 2018 letter from Plaintiffs' counsel. See A0072-A0073. With respect to the production and disclosure of documents and information identifying PPM's customers, PPM responded, in pertinent part: "Given what TNA has pled in this case and concerns over proportionality, we do not believe the Court will order PPM to turn over its customer information to TNA." A0072. PPM's counsel reported, however, that they were "still in the process of discussing the issue with [PPM]." A0072.

A short time thereafter, on March 1, 2018, PPM provided amended objections and responses to Plaintiffs' First Set of Interrogatories and Plaintiffs' First Set of Requests for Production. See A0074-A0091; A0092-A0121. While PPM's amended responses attempted to address a number of other deficiencies in PPM's original responses, the amended responses still did not provide the requested information and documents with respect to the identification of PPM's customers. For example, in amended response to Request No. 24, PPM "objects to the extent the request calls for the disclosure of any of Defendant's trade secrets or other confidential information, for clarification, if necessary, including Defendant's customers' and potential customers' identifying information" and also "objects to revealing the identities of its customers and potential customers." A0108-A0109. Likewise, PPM amended its response to Interrogatory No. 4 to state as follows: "Defendant further objects to the extent the interrogatory calls for the disclosure of any of Defendant's trade secrets or other confidential information, for clarification, if necessary, including Defendant's customers' identifying information." A0083.

Thereafter, Plaintiffs raised their intent to file the present [MTC] with PPM's counsel, and attempted several times to schedule the requisite meet and confer to attempt to resolve the matter without seeking assistance from the Court. See A0129-A0130. Ultimately, the parties conferred on the issue on April 4, 2018, at which conference PPM maintained its objection to Plaintiffs' discovery requests seeking the identification of PPM's customers. See A0129-A0130.

Dkt. No. 69 at 1-6 (footnotes omitted).

TNA contends that the discovery that it requested "regarding the identification of PPM's customers with respect to the accused products is highly relevant to Plaintiffs' claims"; that "PPM's objections to the requests – which are based primarily on the confidential nature of the information – are unfounded in view of the facts of the case"; and that, "[a]s such, Plaintiffs request that this Court enter an Order compelling PPM to produce documents and information in response to Plaintiff's discovery requests seeking the identification of PPM's customers." *Id.* at 6.

TNA contends that the requested information is relevant to Plaintiffs' claims and that PPM's objections are unfounded, where

> [t]he primary objection stressed by PPM throughout PPM's amended objections to Plaintiffs' Requests and Interrogatories seeking identifying information regarding PPM's customers is based on the "confidential" nature of that information. See, e.g., A0083; A0108-A0109. This objection is simply unfounded in view of the controlling Protective Order in this case (ECF No. 38). As previously explained by Plaintiffs' counsel during the parties' exchanges on this issue, "any business or competitive concern regarding disclosure of the identification of PPM's customer is sufficiently alleviated by the Protective Order in this case, which allows PPM to designate such information 'Confidential Attorney Eyes Only Information,' thereby shielding the information from TNA itself." A0067; see generally ECF No. 38.
>
> Once again, the court's decision in *Tama* [*Plastic Industry v. Pritchett Twine & Net Wrap, LLC*, No. 8:12-CV-324, 2013 WL 275013 (D. Neb. Jan. 24, 2013),] is highly instructive on this point. In *Tama*, the court evaluated – and dismissed – a similar "confidentiality" objection to that of PPM here. *Tama*, 2013 WL 275013, at *6-*7. The defendant in *Tama* had "object[ed] to producing its customer lists based on confidentiality and ask[ed] for a protective order allowing it to withhold specific customer names." *Id.* at *6. In overruling the objection, and denying the motion for protective order, the court noted that, "[w]hile customer lists are undoubtedly confidential information, the parties already have a protective order in place to address the production of confidential information – including the ability of parties to designate documents as 'Attorney's Eyes Only.'" *Id.* The court found that any

concern by defendant regarding disclosure of its customer information was controlled and resolved under the protective order. *Id.* As such, the court ordered the defendant to "produce the responsive customer information," and designate it "Attorneys' Eyes Only" pursuant to the controlling protective order. *Id.* at *6-*7.

Further, PPM's confidentiality objection to Plaintiffs' Interrogatory No. 4 is especially unfounded, in that PPM waived any such objection by not specifically including it in its original response to Interrogatory No. 4. Pursuant to Rule 33(b)(4) of the Federal Rules of Civil Procedure, "[t]he grounds for objecting to an interrogatory must be stated with specificity" and "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." (emphasis added) Here, as discussed above, PPM did not include any specific objection to revealing the identities of its customers in response to Plaintiffs' Interrogatory No. 4. See A0033-A0034. Rather, PPM objected only to the definition of "Accused Products" as used in the Interrogatory, and otherwise objected to the Interrogatory as compound. A0033-A0034. By not stating "with specificity" an objection to disclosing customer information in original response to Interrogatory No. 4, PPM has waived any such objection to that Interrogatory.

Moreover, PPM's "Supplemental Objections" to Plaintiffs' First Set of Interrogatories did not cure this waiver. See A0063-A0064. At best, those supplemental objections – served by letter, as opposed to formal supplemental responses – merely added a general objection to the disclosure of PPM's "trade secrets or other confidential information." A0063. The supplemental objection did not state "with specificity" an objection to disclosing customer information in response to Interrogatory No. 4. See Fed. R. Civ. P. 33(b)(4). Indeed, no such specific objection was added until PPM's amended response to Interrogatory No. 4. See A0082-A0083.

PPM's additional objections to Plaintiff's Requests – that they are "overbroad, not sufficiently tailored to obtain relevant or admissible information, and not sufficiently limited by time" (see, e.g., A0109-110 (Request No. 24)) – are generic, boilerplate objections, which are also unfounded. Indeed, as noted in PPM's responses, PPM has provided responsive information and documents in response to Plaintiff's requests with the lone exception of the identification of PPM's customers. And PPM's objection to disclosing the identification of its customers is itself unfounded, as discussed above. Further, and for similar reasons, PPM cannot show that Plaintiffs' Requests fail the proportionality calculation mandated by [Federal Rule of Civil Procedure] 26(b). See *Seastrunk*, 2017 WL 6406627, at *7. Rather, as discussed above, the discovery is very important to resolving the issues in the case, and is particularly

important to Plaintiffs' damages claims. Moreover, Plaintiffs do not have access to the requested information outside of PPM. And, finally, as discussed above, no burden or expense of the discovery outweighs its benefit, as the confidential nature of the discovery may remain protected from TNA itself through appropriate designation of the information under the controlling Protective Order.

For each of the foregoing reasons, PPM's objections to Plaintiffs' Requests and Interrogatories seeking identifying information regarding PPM's customers are unfounded, and should be overruled. Plaintiffs request that this Court overrule PPM's objections and order PPM to produce documents and information in response to Plaintiff's discovery requests relating to the identification of PPM's customers with respect to the accused PPM products. Plaintiffs further request an extension of the fact discovery deadline from May 11, 2018 to and through June 1, 2018 for the limited purpose of conducting discovery, including third-party discovery, relating to PPM's customers – which PPM has blocked for months now.

*Id.* at 11-13.

"Plaintiffs request that the Court enter an order compelling PPM to produce documents and information in response to Plaintiffs' discovery requests relating to the identification of PPM's customers with respect to the accused PPM products at issue in this patent infringement case within three (3) days of the order, extending the fact discovery deadline from May 11, 2018 to and through June 1, 2018 for the limited purpose of conducting discovery, including third-party discovery, relating to PPM's customers, and awarding Plaintiffs its attorneys' fees and expenses incurred in preparing and filing this [MTC]." Dkt. No. 68 at 1-2; *see also* Dkt. No. 69 at 14.

PPM oppose this request and moves for in camera review, explaining that

Plaintiffs' [MTC] move the Court to sanction a fishing expedition – specifically, to unmask the names and confidential contact information of PPM's customers and those customers' employees, merely so that they

can bully them and cause damage to the business relationship between PPM and its customers.

Plaintiffs' [MTC] is sought in a very small case, one in which PPM's entire profits for the complete installations are in total only $58,564.00 from all "gateless" products that could even remotely be considered the same type of conveyors that are at issue in this matter. It is important to note the one alleged infringing product that was named by Plaintiffs in the Complaint was not installed by PPM, and the evidence will conclusively show that the Plaintiffs knew this to be true because the sales person that sold the installation was an employee of Plaintiffs. Moreover, and in further support of its positions on proportionality, since almost day one of this case, PPM has tried to settle this case, requesting the Magistrate Judge's ADR program and making an offer of judgment of $37,647.00.

Critically, the companies Plaintiffs state they lost profits to are not even the customers that Plaintiffs seek to unmask by their [MTC]. Def. App'x Tab A, Plaintiff TNA Australia Pty Limited's ("TNA Australia") Answers to Interrogatory Nos. 1 and 3. TNA Australia lists ███████ ████████████████ – none of these are implicated in PPM's discovery responses. PPM is prepared to present evidence of this to the Court in camera substantiating this contention. The masked customer identities therefore do nothing to support Plaintiffs' claim for lost profits.

Compelling these customer identities would be fully disproportionate to the needs of this case, cost PPM thousands of dollars in fees to reproduce hundreds of pages of production, force disclosure of this data to a competitor, and do absolutely nothing to further Plaintiffs' case. The entry of a protective order does not alleviate these concerns. Most importantly, compelling these customer identities is not consistent with the law that is persuasive to this Court.

Dkt. No. 77 at 1-2 (emphasis and footnote omitted). PPM "note[s] that as to each request for production or interrogatory implicating customer information of the Plaintiffs, the Plaintiffs have objected to similar production and/or disclosure" and contends that "Plaintiffs' requests for customer information from PPM are neither proportional to the needs or the case nor relevant." *Id.* at 3.

According to PPM, "[e]ven in this small case, PPM has produced 1,576 pages of production"; "[d]ue to the nature of Plaintiffs' requests and PPM's desire to make a full and good faith response, PPM responded with hundreds of pages of documents containing the relevant and needed customer information"; but "[i]t is the customer identifying information in these documents that Plaintiffs now seek to unmask," and "[t]he heart of the issue is: for what legitimate purpose?" *Id.* (emphasis omitted).

In addition to arguing that the requested discovery is not proportional to the needs of the case or relevant to the parties' claims or defenses, PPM contends that blanket "Attorney's Eyes Only" designation is not the solution:

> In Plaintiffs' own discovery responses, it has recently taken to a blanket designation of all documents related to its own customers as "Attorney's Eyes Only." Due to the designation, PPM's counsel cannot review this information with its clients in any form. PPM is preparing a motion to compel on this issue, as Plaintiffs have already indicated they believe these to be appropriate discovery responses. The better solution to encourage is disclosure of these documents with the irrelevant customer identities masked, but allowing for client review of all other pertinent information in the documents. This is the manner in which PPM approached its own discovery responses.

*Id.* at 6. And PPM moves for in camera review, explaining that

> [t]his discovery dispute could be disposed by the Magistrate Judge reviewing the customers in PPM's discovery responses, comparing it to a list of companies in which Plaintiffs claim to have lost sales, and then ordering the PPM to disclose only those customers which match those on Plaintiffs' list. PPM has proposed this to Plaintiffs, to be handled through a third-party neutral such as a mediator, and that proposal was not accepted.
>
> Plaintiffs have no right to the discovery of PPM's customers which are not relevant to the claims or remedies sought in the case. Therefore, PPM requests the Court order the parties to provide their respective lists to the Magistrate Judge within 10 days of such order, for further review

and disposition by the Magistrate Judge. The Court has the authority to issue such an order under Federal Rule of Civil Procedure 26(c).

*Id.*

PPM argues that "Plaintiffs are not entitled to discovery which is neither relevant nor proportional to the needs of this case"; that "[d]isclosure of the identities of PPM's customers, for which Plaintiffs claim no lost sales, should not be allowed under the doctrine of relevance and proportionality"; and that, "[f]or the reasons set forth herein, we respectfully request the Court (1) order PPM to provide a list of customers contained in its discovery responses, and order Plaintiffs to provide a list of companies from which it lost sales, within 10 days of such order; (2) review the respective lists; and (3) order PPM to disclose such customer identities as match between the lists. Otherwise, PPM requests the Plaintiffs' [MTC] be denied." *Id.* at 7.

TNA replies that,

[t]o avoid legitimate discovery in this case, PPM's primary retort to TNA's Motion is to argue, baselessly, that the Motion is a "fishing expedition" with the sole purported goal of "bully[ing]" PPM's customers "and caus[ing] damage to the business relationship between PPM and its customers." That could not be further from the truth. Rather, as discussed in TNA's Opening Brief (ECF No. 69), the purpose of the requested discovery is to support TNA's claims for damages in this case, which include claims for lost profits, lost sales, and lost opportunities, as well as a claim for injunctive relief – each of which requires the identification of PPM's customers. Indeed, the discovery TNA seeks here is routine, and the reasons for seeking it are supported by the case law. Moreover, and for similar reasons, the discovery is proportional to the needs of the case – especially given that PPM has identified only four infringing installations, and therefore TNA simply seeks the identification of (at most) four PPM customers. And, as is clear from the fact that PPM has not articulated any legitimate reason for why limiting access to the requested information to TNA's outside counsel only is insufficient, any business or competitive concern regarding disclosure of

the identification of PPM's customers in this case is fully resolved in view of the controlling Protective Order (ECF No. 38) – a point PPM completely ignores in its Response.

As such, for the reasons discussed herein, as well as TNA's Opening Brief (ECF No. 69), TNA respectfully requests that this Court grant TNA's Motion in its entirety, enter an Order compelling PPM to produce the requested discovery regarding the identification of PPM's customers with respect to the accused products, enter an Order requiring PPM to pay TNA's expenses incurred in making its Motion (including attorneys' fees), and enter an Order extending the fact discovery deadline from May 11, 2018 to and through June 1, 2018 for the limited purpose of conducting discovery, including third-party discovery, relating to PPM's customers.

Dkt. No. 80 at 1-2 (emphasis omitted). "TNA respectfully requests that this Court grant TNA's [MTC] in its entirety, enter an Order compelling PPM to produce the discovery requested by TNA regarding the identification of PPM's customers with respect to the accused products, and also enter an Order requiring PPM to pay TNA's expenses incurred in making this [MTC], including attorneys' fees." *Id.* at 6-7. "Relatedly, TNA requests that the Court reject PPM's proposal regarding the submission of respective customer lists of the parties to the Court for review and analysis, as the proposed process and protocol would only further delay the production of highly relevant information PPM should have produced months ago and unnecessarily waste the Court's time and resources." *Id.* at 7.

### Legal Standards

"Unless otherwise limited by court order, ... [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1); *accord Booth v. City of Dallas*, 312 F.R.D. 427, 433 (N.D. Tex. 2015).

"Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case – which are related but distinct requirements." *Samsung Electronics Am., Inc. v. Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017).

"To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value. If it were otherwise, it would make little sense for Rule 26(b)(1) to direct courts to consider whether discovery that is relevant to any party's claim or defense is also important in resolving the issues." *Id.* at 280.

Federal Rule of Civil Procedure 37(a) governs motions to compel discovery responses. Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer interrogatories under Federal Rule of Civil Procedure 33. *See* FED. R. CIV. P. 37(a)(3)(B)(iii)-(iv); *accord Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 368 (5th Cir. 2009) ("A party may move to compel production of materials that are within the scope of discovery and have been requested but not received. FED. R. CIV. P. 37(a). Yet, a court may decline to compel, and, at its option or on motion, 'may, for good cause,

issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden ..., including ... forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.' FED. R. CIV. P. 26(c)(1)(D); *see also* FED. R. CIV. P. 37(a)(5)(B).").

For purposes of Rule 37(a), "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4).

Federal Rule of Civil Procedure 34(a)(1) provides that "[a] party may serve on any other party a request within the scope of Rule 26(b): (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control: (A) any designated documents or electronically stored information – including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilation – stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things." FED. R. CIV. P. 34(a). Further, Federal Rule of Civil Procedure 34(b) provides that a request for production or inspection "must describe with reasonable particularity each item or category of items to be inspected" or produced. FED. R. CIV. P. 34(b)(1)(A).

In response to a Rule 34(a) request, "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."

-14-

FED. R. CIV. P. 34(b)(2)(B). Federal Rule of Civil Procedure 34(b)(2)(E) further provides that, "[u]nless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information [("ESI")]: (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request; (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and (iii) A party need not produce the same electronically stored information in more than one form." FED. R. CIV. P. 34(b)(2)(E). The Court has concluded "that, where Rule 34(b)(2)(E)(i) addresses the organization of a production and Rule 34(b)(2)(E)(ii) specifically addresses the form for producing ESI (where form of production is inherently not an issue with hard-copy documents), and in light of the purposes of the 2006 amendments to Rule 34 and of Rule 34(b)(2)(E)(i)'s requirements, Rules 34(b)(2)(E)(i) and 34(b)(2)(E)(ii) should both apply to ESI productions." *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 249 (N.D. Tex. 2016). But, to comply with Rule 34(b)(2)(E)(i), "Rule 34 requires a party to [either] produce documents as they are kept in the usual course of business or to organize and label them to correspond to the categories in the request," *Turner v. Nationstar Mortg. LLC*, No. 3:14-cv-1704-L-BN, 2015 WL 11120879, at *2 (N.D. Tex. May 14, 2015) – the party is not required to do both. But, if a party elects to produce ESI or other documents as they are kept in the usual course of business, it must present competent evidence that it has done so "or must, alternatively, organize and label their ESI [and

-15-

other document] productions to correspond to each request." *See McKinney/Pearl*, 322 F.R.D. at 249-51; *accord Chilly Dil Consulting, Inc. v. JetPay ISO Servs., LLC*, No. 3:14-cv-2749-P-BK, 2015 WL 13469921, at *3 (N.D. Tex. Dec. 21, 2015) ("When a producing party chooses not to organize documents to correspond with categories in the request, it is that party's burden to demonstrate that the documents are produced as kept in the usual course of business. To carry its burden, the producing party must do more than merely represent to the court and the requesting party that the documents have been produced as they are maintained." (citations omitted)).

General or boilerplate objections are invalid, and "[o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections. Amended Federal Rule of Civil Procedure 34(b)(2) effectively codifies this requirement, at least in part: 'An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest.'" *OrchestrateHR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016) (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014); quoting FED. R. CIV. P. 34(b)(2)(C)), *objections overruled*, No. 3:13-cv-2110-KS, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016).

In sum, "[a] party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or

document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld." *Heller*, 303 F.R.D. at 485.

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490.

And the Court has previously explained that "responding to interrogatories and document[] requests 'subject to' and/or 'without waiving' objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure"; "this manner of responding to a document request or interrogatory leaves the requesting party guessing and wondering as to the scope of the documents or information that will be provided as responsive will be"; "outside of the privilege and work product context..., responding to a document request or interrogatory 'subject to' and 'without waiving' objections is not consistent with the

-17-

Federal Rules or warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; "a responding party has a duty to respond to or answer a discovery request to the extent that it is not objectionable" and "must describe what portions of the interrogatory or document request it is, and what portions it is not, answering or responding to based on its objections and why"; "if the request is truly objectionable – that is, the information or documents sought are not properly discoverable under the Federal Rules – the responding party should stand on an objection so far as it goes"; and, "as a general matter, if an objection does not preclude or prevent a response or answer, at least in part, the objection is improper and should not be made." *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 470 (N.D. Tex. 2015) (quoting *Heller*, 303 F.R.D. at 487-88 (internal quotation marks omitted)).

A party who has objected to a discovery request must, in response to a Rule 37(a) motion to compel, urge and argue in support of its objection to an interrogatory or request, and, if it does not, it waives the objection. *See OrchestrateHR*, 178 F. Supp. 3d at 507 (citing *Dolquist v. Heartland Presbytery*, 221 F.R.D. 564, 568 (D. Kan. 2004); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999)).

Federal Rules of Civil Procedure 26(b) and 34 have been amended, effective December 1, 2015. For the reasons the Court has previously explained, the amendments to Rule 26 do not alter the burdens imposed on the party resisting discovery discussed above. *See Carr*, 312 F.R.D. at 463-69. Rather, just as was the case

before the December 1, 2015 amendments, under Rules 26(b)(1) and 26(b)(2)(C)(iii), a court can – and must – limit proposed discovery that it determines is not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit – and the court must do so even in the absence of a motion. *See Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).

Thus, as amended, Rule 26(b)(2)(C) provides that, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

But a party seeking to resist discovery on these grounds still bears the burden of making a specific objection and showing that any discovery request that is relevant to any party's claim or defense fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information to address – insofar as that information is available to it – the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

-19-

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Accord First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, No. CV 15-638, 2017 WL 2267149, at *1 (E.D. La. May 24, 2017) ("In this instance, defendant has offered nothing more than a boilerplate proportionality objection, without providing any information concerning burden or expense that the court would expect to be within defendant's own knowledge.").

The party seeking discovery, to prevail on a motion to compel, may well need to make its own showing of many or all of the proportionality factors, including the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, and the importance of the discovery in resolving the issues, in opposition to the resisting party's showing.

And the party seeking discovery is required to comply with Rule 26(b)(1)'s proportionality limits on discovery requests; is also subject to Federal Rule of Civil Procedure 26(g)(1)'s requirement to certify "that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: ... (B) with respect to a discovery request..., it is: (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance

of the issues at stake in the action"; and faces Rule 26(g)(3) sanctions "[i]f a certification violates this rule without substantial justification." FED. R. CIV. P. 26(g)(1)(B), 26(g)(3). *See generally Heller*, 303 F.R.D. at 475-77, 493-95.

But the amendments to Rule 26(b) do not alter the basic allocation of the burden on the party resisting discovery to – in order to successfully resist a motion to compel – specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or fails the required proportionality calculation or is otherwise objectionable. *See McLeod*, 894 F.2d at 1485; *Heller*, 303 F.R.D. at 483-93.

Federal Rule of Civil Procedure 37(a)(5)(A) provides that, if a motion to compel is granted, or if the requested discovery is provided after the motion was filed, "the court must, after giving an opportunity to be heard, require the party ... whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(a)(5)(A); *accord Washington v. M. Hanna Const. Inc.*, 299 F. App'x 399, 402 (5th Cir. 2008).

Federal Rules of Civil Procedure 37(a)(5)(B) and 37(a)(5)(C) further provide in pertinent part that, "[i]f the motion is denied, the court may issue any protective order

authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party ... who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees," "[b]ut the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust," and that, "[i]f the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." FED. R. CIV. P. 37(a)(5)(B)-(C); *accord De Angelis v. City of El Paso*, 265 F. App'x 390, 398 (5th Cir. 2008).

"[A] motion is 'substantially justified' if there is a genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action]." *De Angelis*, 265 F. App'x at 398 (internal quotation marks omitted); *see also Heller*, 303 F.R.D. at 477 ("The United States Supreme Court has defined 'substantially justified' to mean 'justified in substance or in the main – that is, justified to a degree that could satisfy a reasonable person.' 'Substantial justification' entails a 'reasonable basis in both law and fact,' such that 'there is a genuine dispute ... or if reasonable people could differ [as to the appropriateness of the contested action].'" (citations omitted)).

As amended, effective December 1, 2015, Federal Rule of Civil Procedure 26(c)(1) authorizes protective orders, for good cause shown, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; (B) specifying terms, including time and place or allocation of expenses, for the disclosure or discovery; (C)

prescribing a discovery method other than the one selected by the party seeking discovery; (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designating the persons who may be present while the discovery is conducted; (F) requiring that a deposition be sealed and opened only on court order; (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." FED. R. CIV. P. 26(c)(1).

"'[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir.1998) (quoting *U.S. v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir.1978)). A party resisting discovery under Federal Rule of Civil Procedure 26(c)(1)(G) "must first establish that the information sought is a trade secret or other confidential information and then demonstrate that its disclosure would cause an identifiable, significant harm." *Stone Connection, Inc. v. Simpson*, No. 4:07-cv-431, 2008 WL 1927033, at *1 (E.D. Tex. Apr. 28, 2008) (citing *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, No. 06-894-JJB-DLD, 2008 WL 566833, at *2 (M.D. La. Feb. 29, 2008)); *see also* 8 C. WRIGHT & A. MILLER, FED'L PRAC. & PROC. § 2043 (1970) ("Besides showing that the information qualifies for protection, the moving party must also show good cause for restricting dissemination on the ground that it would be harmed by its

disclosure."). The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

## Analysis

I. <u>Relevance to any party's claims or defenses</u>

PPM asserts that "one alleged infringing product that was named by Plaintiffs in the Complaint was not installed by PPM, and the evidence will conclusively show that the Plaintiffs knew this to be true because the sales person that sold the installation was an employee of Plaintiffs." Dkt. No. 77 at 1. But a party cannot refuse to engage in – and, here, should not be excused from being subjected to – discovery simply because the discovery is relevant to a claim on which the resisting party believes that he will or should prevail. *See Heller*, 303 F.R.D. at 489 (citing *Third Pentacle, LLC v. Interactive Life Forms, LLC*, No. 3:10cv00238, 2012 WL 27473, at *3 (S.D. Ohio Jan. 5, 2012) (even if a party "presently holds a strong belief in the merits of [the party's] litigation positions, [the party's] strong belief – whether ultimately justified or not – provides no basis for avoiding [the party's] discovery obligations created by the Federal Rules of Civil Procedure")).

PPM also contends that "[t]he companies Plaintiffs claim they lost profits to –

██████████████████████████████████████████████████████

████████████ – are not part of PPM's discovery responses," based on TNA's Answers to Interrogatory Nos. 1 and 3; that, "[b]ecause the customers who purchased gateless products from PPM do not overlap with the Plaintiffs' list of potential lost sales, PPM's customer identities are not probative as to Plaintiffs' theoretical lost profits"; that

"Plaintiffs also do not need this information to calculate a reasonable royalty"; and that, "[a]s to the injunction analysis, again, because PPM's customer list and Plaintiffs' potential lost sales list do not match up, PPM's customer information is not probative as to the damages claimed by the Plaintiffs." Dkt. No. 77 at 5-6.

But that is an unduly narrow view of what makes information relevant to a claim or defense under Rule 26(b)(1). TNA's interrogatory answers on which PPM's argument depends themselves explain that, as to the basis for TNA's requested injunctive relief, "TNA has suffered irreparable and incalculable loss of market share, profits, business opportunities, and goodwill, including, but not limited to, with respect to the following TNA customers and/or potential TNA customers: ███████████ ██████████████████████████████████████████████████████████." Dkt. No. 77-1 at 4 of 11. And TNA explained that,

> although PPM's Interrogatory seeks damages-related information, PPM has refused to produce highly relevant information concerning PPM's own activities and products, including but not limited to the identification of PPM's customers. Further discovery of PPM's customers is likely to result in information relevant to further harm suffered by TNA as a result of PPM's infringement. TNA will respond further to this Interrogatory after further discovery, including PPM's production of the discovery that it is obligated to produce.

*Id.* at 4-5 of 11. And, as to the basis for TNA's allegations of lost profits, lost sales, and/or lost opportunities, TNA's interrogatory answer reported that "TNA has lost sales and profits to PPM on more than one occasion in these market segments in recent years, and those lost sales and profits, including, but not limited, to lost sales and/or opportunities with respect to ████████████████████████████████████████

-25-

████████████████████, are believed to be due, in whole or in part, to PPM's infringement of U.S. Patent No. 7,185,75." *Id.* at 10-11 of 11. And TNA again further qualified this answer because, "although PPM's Interrogatory seeks damages-related information, PPM has refused to produce highly relevant information concerning PPM's own activities and products, including but not limited to the identification of PPM's customers," and "[f]urther discovery of PPM's customers is likely to result in information relevant to further harm suffered by TNA as a result of PPM's infringement." *Id.* at 11 of 11.

TNA accordingly asserts in its reply that, "[u]nable to rebut the legal relevance of the requested information, PPM responds simply that the identification of its customers is not relevant in this particular case '[b]ecause the customers who purchased gateless products from PPM do not overlap with the Plaintiffs' list of potential lost sales'" and that "PPM's argument is premised on the incorrect assumption that TNA necessarily has full and accurate knowledge regarding each sale it has lost to a competitor in the industry." Dkt. No. 80 at 2 (emphasis omitted). TNA explains that it "has identified in its own discovery responses the customers (or potential customers) to whom TNA believes it lost business to PPM related to the accused PPM products" but that TNA "does not have full and accurate knowledge regarding each sale it has lost to PPM related to the accused products in view of the confidential bid process prevalent in the relevant market" and, "as PPM concedes, 'PPM is the only party with access to its customer information.'" *Id.* at 2-3.

Under the circumstances, as TNA persuasively argues in reply, PPM has not met its burden to show that the each discovery request at issue in the MTC is not relevant to TNA's claims for lost profits and injunctive relief.

II.    <u>Proportionality to the needs of the case</u>

PPM commendably grounds its argument that the discovery that TNA seeks is not proportionate to the needs of the case in a discussion of Rule 26(b)(1)'s so-called proportionality factors. But a review of the parties' arguments and the circumstances presented cuts against PPM's ultimate conclusion. As TNA argues, "PPM's argument ignores TNA's claims for injunctive relief, is [] based on incorrect assumptions, and is further based on unsupported, conclusory assertions with respect to the purported burden on PPM," and on a full "application of the relevant considerations, TNA's requests do not fail the proportionality calculation of Rule 26(b)." Dkt. No. 80 at 4.

A.    **Importance of the Issues at Stake in the Action and Importance of the Discovery in Resolving the Issues**

PPM's argument as to this factor again depends on its assertion that "none of the customers implicated in PPM's discovery responses are the same companies for which Plaintiffs claim they lost sales: ████████████████████████████ ██████████████████████████," and that "there is no lost profits angle in unmasking the identities of the customers in PPM's discovery responses, because Plaintiffs do not claim to have lost sales from any of them." Dkt. No. 77 at 3. As explained above, TNA does not know that it only lost sales to those companies without access by its outside counsel to this information possessed only by PPM that

TNA seeks through discovery. The requested customer information is important to issues that are important in the case as to TNA's requests for recovery of lost profits and injunctive relief.

B.     **Amount in Controversy**

As TNA notes, PPM's argument as to this factor presents only a partial picture of what is at stake in dollar terms. *Compare* Dkt. No. 77 at 4, *with* Dkt. No. 80 at 4. This factor is, at best, weak support for PPM's proportionality argument.

C.     **Relative Access to Information**

PPM acknowledges that it "is the only party with access to its customer information at this time." Dkt. No. 77 at 4.

D.     **Parties' Resources**

Here, PPM's argument explains that "no party has conducted discovery into the others' financial resources" and relies on the number of offices and employees for Plaintiff TNA Australia Pty Limited and for PPM reflected in publically-available information. *See* Dkt. No. 77 at 4-5. As TNA correctly notes, that is not the sort of concrete information that the Court needs as to this factor – information that, at least as to itself (the party allegedly with "financial resources are far in excess of PPM's," *id.* at 5), PPM could have provided but did not.

E.     **Burden or Expense Weighed Against its Likely Benefit**

As to this final factor, PPM again asserts that "the discovery that Plaintiffs now seeks – the unmasking of PPM's customers' identifying information – will not lend to their claims or damages" – a contention that the Court cannot accept as explained

above – and that "PPM anticipates that the time required to unmask each customer reference in each page, which total many hundreds of pages, will cost over $10,000 in attorney time." Dkt. No. 77 at 5. As TNA notes, this is not supported by affidavits or offering evidence revealing the nature of the burden as this kind of argument requires, and TNA contends that "[t]his is a staggering estimate, which is, not surprisingly, completely unsupported by any affidavit or other evidence," where "it is hard to fathom how or why it would cost PPM upwards of $10,000 to produce unredacted copies of redacted documents it has already produced" and where "TNA's Interrogatory No. 4 simply seeks the identification of PPM's customers with respect to the four disclosed products – as opposed to any document production per se." Dkt. No. 80 at 5-6 (emphasis omitted). The Court agrees that PPM has not substantiated any alleged undue burden to produce the requested information and documents.

In sum, the Court cannot accept PPM's argument that "four out of the five considerations in Rule 26(b)(1) cut against these discovery requests being proportional to the needs of the case" and determines, rather, that TNA's discovery requests at issue are proportional to the needs of the case, considering all of the relevant factors under Rule 26(b)(1), as TNA persuasively explains in reply:

> As noted above, the requested discovery is very important to resolving the issues in the case, and is particularly important to TNA's damages claims. TNA, however, does not have access to the requested information outside of PPM – a point PPM concedes. And, PPM has failed to meaningfully articulate and sufficiently demonstrate any burden or expense of the discovery that would outweigh its benefit. Further, as previously discussed, no burden or expense of the discovery with respect to the confidential nature of the information outweighs its benefit, as the confidential nature of the discovery may remain protected from TNA

itself through appropriate designation of the information under the controlling Protective Order.

*Id.* at 6.

III.    <u>In camera review and redaction requests</u>

The Court has previously explained that, generally, "a responding party cannot withhold a 50-page report because only two pages contain responsive information – and cannot redact nonprivileged information from any responsive document because the information is not itself responsive[]." *Samsung*, 321 F.R.D. at 299. Another judge has noted that relevant court decisions includes three themes that

> pervade each of them[:] (1) that redaction of otherwise discoverable documents is the exception rather than the rule; (2) that ordinarily, the fact that the producing party is not harmed by producing irrelevant information or by producing sensitive information which is subject to a protective order restricting its dissemination and use renders redaction both unnecessary and potentially disruptive to the orderly resolution of the case; and (3) that the Court should not be burdened with an in camera inspection of redacted documents merely to confirm the relevance or irrelevance of redacted information, but only when necessary to protect privileged material whose production might waive the privilege. Redaction is, after all, an alteration of potential evidence and a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case. Furthermore, [i]t is a rare document that contains only relevant information. Oftentimes, irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information.

*United States ex rel. Simms v. Austin Radiological Ass'n*, 292 F.R.D. 378, 386 (W.D. Tex. 2013) (citations and internal quotation marks omitted); *accord Pavillion Bank v. OneBeacon Am. Ins. Co.*, No. 3:12-CV-05211-G-BK, 2013 WL 12126258, at *3 (N.D. Tex. Nov. 13, 2013).

This Court has also previously ruled in another case that an "Agreed Protective Order and the confidentiality designations that it authorizes provide sufficient protections for [a party's] concerns regarding its confidential and proprietary customer list." *Samsung*, 321 F.R.D. at 292.

And another judge in this circuit has noted that, "[w]hile in camera review is often appropriate to resolve claims of privilege, for reasons too numerous to list here, this Court declines to adopt a policy of reviewing documents in camera for relevance." *Farley v. Callais & Sons LLC*, Civ. A. No. 14-2550, 2015 WL 4730729, at *4 n.11 (E.D. La. Aug. 10, 2015).

Because PPM has not established that the discovery that TNA requests is not relevant to TNA's claims in this case, the Court declines PPM's invitation to engage in an in camera review of its customers' names. Further, the Stipulated Protective Order [Dkt. No. 38] to which the parties agreed provides sufficient protections for the responsive information that PPM must produce, which it can – if appropriate and permitted under Stipulated Protective Order's terms – designate as "Confidential Attorney Eyes Only." While PPM protests that this will be inconvenient for TNA, TNA expresses no such concerns. *See* Dkt. No. 80 at 1, 6 (asserting that "PPM has not articulated any legitimate reason for why limiting access to the requested information to TNA's outside counsel only is insufficient" and explaining that "the confidential nature of the discovery may remain protected from TNA itself through appropriate designation of the information under the controlling Protective Order"). That PPM may do so addresses the concerns raised by its objections based on confidentiality and trade

secrets, which are otherwise overruled and which do not permit it to redact what it asserts to be irrelevant or unresponsive information.

IV.    <u>Award of expenses</u>

The Court will grant Defendant PPM Technologies, LLC until **May 11, 2018** to file a response explaining why the Court should not enter an order requiring it or its counsel to pay Plaintiffs TNA Australia Pty Limited and TNA North America Inc., as required by Rule 37(a)(5)(A), the expenses, including attorneys' fees, that Plaintiffs incurred in drafting and filing their Motion to Compel to Discovery [Dkt. No. 68]. Plaintiffs may file a reply in support of an award of expenses under Rule 37(a)(5)(A) by **May 25, 2018**.

## Conclusion

For the reasons and to the extent explained above, the Court GRANTS Plaintiffs TNA Australia Pty Limited and TNA North America Inc.'s Motion to Compel Discovery [Dkt. No. 68] and DENIES Defendant PPM Technologies, LLC's Motion for In Camera Review of Sensitive Documents [Dkt. No. 77]. The Court ORDERS Defendant PPM Technologies, LLC to produce documents and information in response to TNA's discovery requests relating to the identification of PPM's customers with respect to the accused PPM products at issue in this patent infringement case – specifically, Interrogatory No. 4 in Plaintiffs' First Set of Interrogatories and Request Nos. 11, 15, 16, 17, 18, 19, 20, 23, 24, and 34 in Plaintiffs' First Set of Requests for Production – by **May 4, 2018**. The Court further ORDERS that the deadline for completion of fact discovery is extended from May 11, 2018 to and through **June 1, 2018** for the limited

purpose of conducting discovery, including third-party discovery, relating to PPM's customers.

Finally, although this Memorandum Opinion and Order may not contain any confidential information, the Court will, out of an abundance of caution, enter the Memorandum Opinion and Order under seal because some of the underlying motion papers were filed under seal. The parties are further ORDERED to file a joint status report by **April 27, 2018** setting forth their views on whether this Memorandum Opinion and Order contains any confidential information – and, if so, where – and should remain sealed.

SO ORDERED.

DATED: April 19, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE